1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11  ROSIE PRECIADO,                    )  Civil No. 09cv02343 JLS(RBB)
                                       )
12                        Plaintiff,   )
                                       )  **REPORT AND RECOMMENDATION**
13                                     )  **GRANTING DEFENDANT'S CROSS-**
                                       )  **MOTION FOR SUMMARY JUDGMENT**
14  v.                                 )  **[ECF NO. 25]**
                                       )
15                                     )
                                       )
16  MICHAEL J. ASTRUE, Commissioner    )
    of Social Security,                )
17                                     )
                                       )
18                        Defendant.   )
    _____)
19

20                    **I.   PROCEDURAL BACKGROUND**

21       On November 27, 2006, Plaintiff, Rosie Preciado, filed an

22  application for supplemental security income benefits alleging a

23  disability onset of November 22, 2006.  (Admin. R. Attach. #2, 17,

24  ECF No. 16.)  The Social Security Administration ("SSA") denied her

25  claim on February 27, 2007, and again upon reconsideration on

26  September 11, 2007.  (Id. Attach. #4, 59-63, 65-70; see id. Attach.

27  #2, 17.)  Preciado then filed a written request for a hearing,

28  which is dated October 15, 2007.  (Id. Attach. #4, 73; see id. at

                                    1
                                                        09cv02343 JLS(RBB)

74.)   A hearing was held before Administrative Law Judge ("ALJ")
Edward D. Steinman on April 20, 2009.  (Id. Attach. #2, 28.)   He
issued a written decision on May 14, 2009, finding that Preciado
was not disabled.  (See id. at 14-27.)  The denial of benefits
became final when the Appeals Council declined to review the
decision on August 27, 2009.  (Id. at 2-4.)

On October 21, 2009, Plaintiff filed a Complaint for Review of
Final Decision of the Commissioner of Social Security against
Michael J. Astrue, Commissioner of Social Security, challenging the
denial of Preciado's claim for supplemental income benefits [ECF
No. 1].  Defendant filed an Answer [ECF No. 15] and the
Administrative Record [ECF No. 16].

On March 3, 2011, Preciado's Motion for Summary Judgement with
an attached Memorandum of Points and Authorities was filed [ECF No.
20].  Defendant filed a Cross-Motion for Summary Judgment and
Memorandum of Points and Authorities on April 25, 2011 [ECF Nos.
25-26].  Preciado's Opposition to Defendant's Cross-Motion for
Summary Judgment was filed along with a Memorandum of Points and
Authorities on May 3, 2011 [ECF No. 28].  In her Opposition to
Defendant's Cross-Motion, Plaintiff conceded that the Court should
deny Preciado's Motion for Summary Judgment.  (Pl.'s Opp'n 1, ECF
No. 28.)  As a result, this Court recommended that the district
court deny her Motion for Summary Judgment [ECF No. 31].

On May 9, 2011, Defendant filed an Opposition to Plaintiff
Rosie Preciado's Opposition to Defendant's Cross-Motion for Summary
Judgment with an exhibit, which the Court construes as Defendant's
Reply [ECF No. 30].

09cv02343 JLS(RBB)

The Defendant's Cross-Motion [ECF No. 25] is suitable for resolution on the papers pursuant to Civil Local Rule 7.1(d)(1). S.D. Cal. Civ. R. 7.1(d)(1).  The Court has reviewed Astrue's Cross-Motion for Summary Judgment, Preciado's Opposition to Defendant's Cross-Motion, and Defendant's Opposition to Plaintiff's Opposition.  For the reasons set forth below, the Court recommends **GRANTING** Defendant's Cross-Motion for Summary Judgment.

## II.   MEDICAL EVIDENCE

Plaintiff is sixty-year-old female with a level of education between eighth and tenth-grade.  (Admin. R. Attach. #3, 57, ECF No. 16; <u>id.</u> Attach. #2, 52.)  Prior to her alleged disability onset in November 2006, Preciado worked as a care giver.  (<u>Id.</u> at 31.)

**A.   Examining Physicians**

**1.   Dr. Ajit Raisinghani, Internal Medicine Evaluation**

In February 2007, Plaintiff underwent an internal medicine evaluation by Dr. Ajit Raisinghani at Seagate Medical Group ("Seagate") for the Disability Evaluation Department of the Department of Social Services.  (<u>Id.</u> Attach. #7, 275, 278.) Despite Preciado's complaints of stress, depression, hypertension, diabetes, and back pain, Dr. Raisinghani determined that Plaintiff had essentially a normal examination and that she required no special physical limitations.  (<u>Id.</u> at 278.)

**2.   Dr. Mounir Soliman, Consultative Psychiatric Evaluation**

Preciado underwent a complete psychiatric evaluation at Seagate in February 2007.  (<u>Id.</u> at 281.)  She complained of depression and stress.  (<u>Id.</u>)  Dr. Mounir Soliman evaluated Preciado's level of functioning by analyzing her living situation, daily activities, transportation situation, relationships, as well

3

1   as her concentration and task completion.  (Id. at 282-83, 285.)

2   The report notes that the Plaintiff is able to cook, clean, drive a

3   car, shop, run errands, practice personal hygiene, and can account

4   for her financial responsibilities.  (Id. at 282-83.)  It also

5   provides that Preciado can "get along well" with her family,

6   friends, and neighbors, but she cannot concentrate on her daily

7   activities.  (Id. at 283.)

8        Dr. Soliman diagnosed Preciado with major depression, mild to

9   moderate.  (Id. at 284.)  Dr. Soliman determined that Preciado's

10  Global Assessment of Functioning ("GAF") level was sixty-six, and

11  he described her prognosis as "fair."  (Id. at 284.)  The doctor

12  also concluded that the Plaintiff was able to understand and carry

13  out complex instructions, interact with coworkers, supervisors, and

14  the public, and she could withstand the pressures of an eight-hour

15  workday.  (Id.)

16       **3.  Dr. Valerie C. Altavas, Internist, Residual Functional**

17            **Capacity Questionnaire**

18       On March 16, 2009, Dr. Valerie C. Altavas, an internist,

19  completed a Residual Functional Capacity ("RFC") Questionnaire

20  regarding Preciado's condition.  (See id. at 348-51.)  Altavas is

21  Preciado's primary care physician.  (See id. Attach. #2, 44-45.)

22  Dr. Altavas diagnosed Preciado with anxiety, depression,

23  hypertension, and diabetes.  (Id. Attach. #7, 348.)  Dr. Altavas

24  deemed that Plaintiff was "incapable of even 'low stress' jobs"

25  because she was "[e]xtremely anxious [and] fidgety."  (Id. at 349.)

26  The doctor opined that Preciado could not sit or stand without a

27  break for more than ten minutes at a time.  (Id.)  Plaintiff could

28  not sit, stand, or walk for more than two hours in an eight-hour

work day.  (Id.)  Dr. Altavas previously concluded, on February 1, 2009, that Plaintiff was unable to work due to severe depression and anxiety.  (Id. at 352.)  The doctor noted that for these conditions, Preciado was under the care of a psychiatrist.  (Id.)

**B.  Nonexamining Physicians**

On February 23, 2007, a disability examiner made a disability determination based upon the case analysis of Preciado's medical condition contained in her file.  (Id. Attach. #3, 57; id. Attach. #7, 298-300.)  The reviewing physician determined that Preciado displayed nonsevere physical and mental conditions.  (Id. Attach. #7, 300.)  On April 5, 2007, the Plaintiff applied for reconsideration, and the initial conclusion was confirmed on September 10, 2007.  (Id. Attach. #3, 64-65; id. Attach. #7, 317-18.)

### III.  THE ADMINISTRATIVE HEARING

A hearing was held before ALJ Steinman on April 20, 2009.  (Id. Attach. #2, 17.)  Preciado appeared in person and was represented by counsel.  (Id.)  A medical expert, Dr. Sidney Bolter, and a vocational expert, Nelly Katsell, were present and testified.  (Id.)[1]

**A.  Preciado's Testimony**

The ALJ examined the Plaintiff on her employment history, psychiatric condition and treatment, alleged physical impairments, living situation, and daily activities.  (See generally id. at 31-

---

[1] In his decision denying benefits, the administrative law judge identified the vocational expert as "Nelly Katsell, M.S. and Certified Rehabilitation Counselor," but the transcript of the administrative hearing identified her as "Ms. Castle."  (Compare id. at 25, with id. at 28, 52.)  The Court will assume that the ALJ correctly identified the vocational expert and will also refer to her as Nelly Katsell.

42.)   Judge Steinman's initial questions addressed Preciado's employment history; the Plaintiff confirmed she had previously worked as a care provider and a janitor.  (Id. at 31.)  Next, the ALJ questioned the Plaintiff about her psychiatric condition.  (Id. at 32-33.)  Preciado claimed that her primary emotional problems were nervousness and depression, and she felt the urge to isolate herself.  (Id.)

The ALJ asked the Plaintiff about her diabetes and hypertension before asking whether "any physical problems" interfered with her ability to function.  (Id. at 33-34.)  Preciado answered that only her depression and nervousness affected her. (Id. at 34.)  Nevertheless, the Plaintiff denied that her physical condition was satisfactory, stating that she had asthma and pain in her back and legs.  (Id.)  Picking up an object weighing five to ten pounds would trigger her back pain.  (Id. at 35.)  The Plaintiff stated that her back pain prohibits her from sitting; she can stand and walk, but not for extended periods.  (Id. at 36.) Preciado expressed that turning is difficult for her, and her capacity for lifting and carrying objects is limited to five to ten pounds.  (Id. at 36-37.)  The Plaintiff acknowledged that these conditions would not allow her to "be at a worksite eight hours a day, five days a week."  (Id. at 37.)  She testified that she did not require the use of an assistive device, such as a cane, to walk.  (Id. at 36.)

According to Preciado, she lives with her son and daughter, and has lived with her son since November 2006.  (Id. at 37.)  She confirmed that she can dress herself, but stress keeps her from preparing food for herself because she cannot hold objects with her

hands.  (<u>Id.</u> at 38.)  The Plaintiff does not perform any chores,
and she predominantly remains in her room throughout the day.  (<u>Id.</u>
at 38-39.)  Preciado has a driver's license, but she told the ALJ
that she cannot drive due to her panic and anxiety attacks.  (<u>Id.</u>
at 39.)

     Preciado's attorney examined her regarding her psychiatric
treatment, weight, education, and sleep pattern.  (<u>See generally</u>
<u>id.</u> at 43-47.)  The Plaintiff testified that her medication helped
her to sleep, but it only relieved her anxiety "once in a while."
(<u>Id.</u> at 43.)

     According to the Plaintiff, Dr. Altavas prescribed Celexa and
Xanax to alleviate Preciado's anxiety, but Preciado stopped using
them because she did not have the money to pay for them.  (<u>Id.</u> at
44-45.)  The Plaintiff explained that Dr. Altavas told her that she
could not work.  (<u>Id.</u> at 44.)  Preciado also stated that her son
and daughter provide her with living expenses.  (<u>Id.</u> at 45.)

**B.  Medical Expert Testimony**

     Medical expert, Dr. Sidney Bolter testified that Preciado's
medical record supported a diagnosis of "deficient disorder, NOS
[not otherwise specified]," "depression NOS," a "significant
anxiety disorder," as well as a "partner relational problem."  (<u>Id.</u>
at 47, 49.)  Dr. Bolter reviewed and described Dr. Soliman's
report, which assessed Preciado with a GAF of sixty-six and opined
that she did not have significant limitations to any kind of
activity, as "universally overdone."  (<u>Id.</u> at 48-49.)  Dr. Bolter
then advised restricting Preciado's workplace activities to simple,
repetitive, nonpublic tasks with minimal contact with peers or
supervisors.  (<u>Id.</u> at 50.) The doctor did not describe any

1  exertional limitations.  (<u>See</u> <u>id.</u>)  He concluded by telling
2  Plaintiff's counsel that Preciado was "not really getting
3  treatment" for a "treatable condition."  (<u>Id.</u> at 52.)
4  **C.  <u>Vocational Expert Testimony</u>**
5      The ALJ presented the vocational expert, Nelly Katsell, M.S.,
6  with five hypothetical scenarios to assess the Plaintiff's
7  potential for returning to work.  (<u>See</u> <u>id.</u> at 52-55.)  Katsell
8  informed the ALJ that Preciado's previous occupation as a care
9  provider carried a medium occupational profile.  (<u>Id.</u> at 31-32.)
10     For the first hypothetical, the ALJ presented Katsell with the
11 DDS analysis, which determined that the Plaintiff had nonsevere,
12 medical and mental impairments.  (<u>Id.</u> at 52.)  Katsell testified
13 that based on this evaluation, Preciado could return to her prior
14 work as a child care attendant.  (<u>Id.</u>)
15     The ALJ questioned the vocational expert on the second
16 hypothetical, comprised of the internal medicine and psychiatric
17 examinations conducted in February 2007.  (<u>Id.</u> at 52-53.)  Neither
18 report identified any limitations to the Plaintiff's activities.
19 (<u>Id.</u>)  Katsell maintained that Preciado could return to work as a
20 child care provider under this hypothetical.  (<u>Id.</u> at 53.)
21     The third hypothetical consisted of Dr. Altavas's March 2009
22 assessment.  (<u>Id.</u>)  The ALJ stated that Dr. Altavas's assessment of
23 the Plaintiff's functional limitations was that Preciado was
24 limited to "less than sedentary work."  (<u>Id.</u>)  Katsell recognized
25 that Dr. Altavas's statement essentially concludes that Preciado's
26 anxiety and depression would be disabling.  (<u>Id.</u>)  In this
27 hypothetical, the vocational expert testified that there would be
28 no work that the Plaintiff could perform.  (<u>Id.</u>)

1    Fourth, ALJ Steinman asked the vocational expert to consider
2 Dr. Bolter's assessment that Preciado could engage in simple,
3 repetitive, nonpublic tasks requiring "minimal contact with peers
4 and supervisors." (<u>Id.</u> at 53-55.) From this hypothetical, Katsell
5 testified that Preciado could not return to her prior occupation.
6 (<u>Id.</u> at 53.)

7    Despite Preciado's psychiatric limitation, Katsell explained
8 that the Plaintiff could perform approximately forty percent of the
9 900 medium exertion job titles. (<u>Id.</u>) The vocational expert
10 identified three medium-exertion-level occupations, a final
11 assembler, a bakery racker, and a hand packager. (<u>Id.</u> at 53-54.)
12 She stated that in San Diego County, 2,500 final assembler,
13 Dictionary of Occupational Titles ("DOT") number 806.684-010, jobs
14 exist, and 820,000 exist in the national economy. (<u>Id.</u> at 53-54.)
15 There are 4,300 bakery racker, DOT number 524.687-018, positions in
16 San Diego County and 699,000 in the national economy. (<u>Id.</u>)
17 Finally, Katsell indicated 3,500 hand packager, DOT number 920.587-
18 018, jobs exist in San Diego County and 567,000 nationally. (<u>Id.</u>
19 at 54-55.)

20    The fifth hypothetical presented the vocational expert was
21 Preciado's assessment of her limitations. (<u>Id.</u> at 55.) The
22 Plaintiff testified that she could lift five to ten pounds
23 occasionally, could not sit at all or stand for an extended period,
24 would need frequent rest breaks, and could not work full time.
25 (<u>Id.</u>) Katsell explained that under this hypothetical, there would
26 not be any work the Plaintiff could perform. (<u>Id.</u>)

27

28

1

## IV.   THE ALJ'S DECISION

2      After considering the record, ALJ Steinman concluded that

3 Preciado suffers from the severe impairment of depressive disorder.

4 (<u>Id.</u> at 19 (citing 20 C.F.R. § 416.920(c)).)   The ALJ concluded

5 that the Plaintiff's capacity to work had been compromised by non-

6 exertional impairments.   (<u>Id.</u> at 26.)   He also made the following

7 relevant findings:

8      1.   The claimant has not engaged in substantial gainful
       activity since November 27, 2006, the application date
9      (20 CFR 416.971 et seq.).

10     2.   The claimant has the following severe impairment:
       depressive disorder (20 CFR 416.920(c)).

11
       . . . .

12
       3.   The claimant does not have an impairment or
13     combination of impairments that meets or medically
       equals one of the listed impairments in 20 CFR Part
14     404, Subpart P, Appendix 1 (20 CFR 416.925 and
       416.926).

15
       . . . .

16
       4.   After careful consideration of the entire record,
17     the undersigned finds that the claimant has the
       residual functional capacity to perform a full range of
18     work at all exertional levels but with the following
       non-exertional limitations: she would be limited to
19     simple, repetitive tasks in a non-public work
       environment with minimal contact with peers and
20     supervisors.

21
       . . . .

22
       . . . [I]n reviewing this record, substantial
23     persuasive weight, was not accorded the claimant's
       treating and examining physicians (except where
24     specifically noted herein). Normally, it is presumed
       that they would have the best available knowledge and
25     evaluation of her impairments and would be in the best
       position to determine the degree to which these
26     impairments would hamper her in the performance of job
       related tasks and duties. But, due to inconsistencies
27     in the record, controlling weight could not be granted
       to Valerie C. Altavas, M.D., (20 CFR § 416.927(d) and
28     SSR 96-2p).

The undersigned Administrative Law Judge acknowledges the opinions expressed by Dr. Altavas in her March 16, 2009, completion of the physical residual functional capacity questionnaire. However, there are inconsistencies in the opinions expressed by Dr. Altavas in that report. First it is noted that Dr. Altavas reports the claimant's physical impairments were hypertension and diabetes, for which she assesses significant physical limitations for the claimant. Yet, when the claimant underwent the consultative internist evaluation on February 6, 2007, by Dr. Raisinghani, the claimant reported that she had never been hospitalized or had any complications from the hypertension, but she does take medication for her hypertension, which appears to keep it under good control. It was also noted during that evaluation, that with regards to her diabetes, she didn't know what her blood sugars were running and she could not provide any evidence of end organ damage or any symptoms. Additionally, there is no evidence in the claimant's medical records report [of] any significant limitations due to either her hypertension or her diabetes.  Therefore, the physical limitations assessed by Dr. Altavas are not consistent with the medical evidence in the record.

Additionally, it is noted that in a note dated February 1, 2009, Dr. Altavas reported that the claimant was unable to work due to her depression and anxiety, not due to her hypertension and depression. However, Dr. Altavas is an internist and not a psychiatrist; and therefore, her opinions regarding limitations due to a psychiatric limitation would carry no special significance.

Accordingly, the undersigned has given less weight to the opinion of Dr. Altavas, than it may otherwise merit.

. . . .

However, to the extent that it is alleged that the claimant cannot perform work at the residual functional capacity as recited above, the Administrative Law Judge finds those allegations are not totally credible for the following clear and convincing reasons.

First, the claimant's activities of daily living include[] independently caring for her own personal hygiene; cooking; cleaning; shopping and running errands; and taking care of financial responsibilities (Exhibit 5F). These activities do not indicate a disabling level of impairment of the claimant's residual functional capacity.

Second, during the February 6, 2007, consultative internist evaluation by Dr. Raisinghani, the claimant

09cv02343 JLS(RBB)

reported that she had never been hospitalized or had any complications from the hypertension; she reported that she does take medication for this, which appears to keep it under good control. Third, with regards to her diabetes, it was also noted during the February 6, 2007, consultative internist evaluation by Dr. Raisinghani, that the claimant didn't know what her blood sugars were running, as she didn't follow it regularly, and she could not provide any evidence of end organ damage or any symptoms.

Fourth, when the claimant was taken to the San Diego County Psychiatric Hospital on December 30, 2006, by the San Diego police department, the claimant reluctantly admitted that she was upset because she found out that her husband was cheating on her again. While it was noted that she had superficial lacerations on both wrists, the claimant acknowledged that she did it more to get her husband's attention and that she did not want to die and that he was not worth harming herself over. Fifth, during the December 30, 2006, admission to the San Diego County Psychiatric Hospital, the claimant did state that she had not been sleeping well and that she has had a poor appetite; however, she denied being suicidal and she denied any other symptoms of depression, stating that she was just very upset about her husband's behavior. Sixth, it was also noted during the hospital admission that the claimant denied any previous psychiatric care.

Seventh, when discussing the claimant's impairments, no physician, neither any of the claimants treating physicians or a State Agency physician ever opined that listing level limitations were ever met or equaled. Eighth, the objective evidence of the claimant's medical record does not establish impairments likely to produce disabling pain or other limitations as alleged for any period of 12 or more continuous months.

. . . .

. . . [T]he Administrative Law Judge finds Dr. Bolter's opinions are persuasive and adopts them.

The objective medical evidence and the claimant's acknowledged activities are consistent with the ability to perform activities at the above stated residual functional capacity levels and inconsistent with the inability to do any work activity.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

. . . .

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

. . . .

The claimant's ability to perform work at all exertional levels has been compromised by non exertional limitations. . . .

. . . .

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines and Social Security Ruling 85-15.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since November 27, 2006, the date the application was filed (20 CFR 416.920(g)).

(Id. at 19-21, 23-27.)

Based on all of the above, ALJ Steinman determined that Preciado was not disabled and not entitled to supplemental security income.  (Id. at 27.)

### V.   STANDARD OF REVIEW

To qualify for supplemental security income under the Social Security Act, an applicant must show two things:  (1) He or she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. §§ 432 (d)(1)

13

1  (A), (2)(A) (West Supp. 2010).  An applicant must meet both

2  requirements to be classified as "disabled."  Id.

3      Sections 205(g) and 1631(c)(3) of the Social Security Act

4  allow applicants whose claims have been denied by the SSA to seek

5  judicial review of the Commissioner's final agency decision.  42

6  U.S.C.A. §§ 405(g), 1383(c)(3) (West Supp. 2010).  The Court should

7  affirm the decision unless "it is based upon legal error or is not

8  supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d

9  1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d

10 599, 601 (9th Cir. 1999)).  Substantial evidence means "'more than

11 a mere scintilla but less than a preponderance'" of the evidence.

12 Bayliss, 427 F.3d at 1214 n.1 (quoting Tidwell, 161 F.3d at 601).

13 "'[T]he court must consider both evidence that supports and the

14 evidence that detracts from the ALJ's conclusion . . . .'"  Frost

15 v. Barnhart, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting Jones v.

16 Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

17      To determine whether a claimant is "disabled," the Social

18 Security regulations use a five-step process outlined in 20 C.F.R.

19 § 416.920 (2010).  If an applicant is found to be "disabled" or

20 "not disabled" at any step, there is no need to proceed further.

21 Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir.

22 2009) (citing 20 C.F.R. § 416.920(a)(4)).  Although the ALJ must

23 assist the applicant in developing a record, the applicant bears

24 the burden of proof during the first four steps.  Bray, 554 F.3d at

25 1222; Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999).

26 If the fifth step is reached, however, the burden shifts to the

27 Commissioner.  Id. at 1098.  The steps for evaluating a claim are

28 as follows:

**Step 1.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "<u>not</u> <u>disabled</u>" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.

**Step 2.** Is the claimant's impairment severe? If not, then the claimant is "<u>not</u> <u>disabled</u>" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

**Step 3.** Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "<u>disabled</u>" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

**Step 4.** Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "<u>not</u> <u>disabled</u>" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

**Step 5.** Is the claimant able to do any other work? If not, then the claimant is "<u>disabled</u>" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "<u>not</u> <u>disabled</u>" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "<u>disabled</u>" and therefore entitled to disability benefits.

<u>Id.</u> at 1098-99 (footnotes and citations omitted).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42

09cv02343 JLS(RBB)

U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.  After a case is remanded and an additional hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision.  Id.

"If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."  Flaten v. Sec'y Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).  Instead, it must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## VI.  DISCUSSION

### A.   The ALJ's Application of the Medical Vocational Guidelines

In his Cross-Motion for Summary Judgment, Astrue charges that the Plaintiff is not subject to the special "no work experience" presumption of disability because she mistakenly limits her reliance to her earnings in 2004, 2005, 2006, and 2007, to demonstrate that she has no prior relevant work experience. (Def.'s Cross-Mot. Summ. J. Mem. P. & A. 1, 5, 6, ECF No. 25.)  The Defendant asserts that the measure for determining past relevant work experience is whether the Plaintiff engaged in substantial gainful activity ("SGA") at any time in previous fifteen years. (Id. at 1.)  The Court addressed these arguments in a separate Report and Recommendation Denying Plaintiff's Motion for Summary Judgment [ECF No. 31].

16

In Preciado's Opposition to Defendant's Cross-Motion for Summary Judgment, Plaintiff argues that Astrue's Motion should be denied and her case should be remanded to the SSA to permit the ALJ to utilize Table Two of the Medical-Vocational Guidelines ("grids") as the proper framework. (Pl.'s Opp'n Attach. #1 Mem. P. & A. 3, ECF No. 28.) Preciado states that when a particular grid does not direct a decision, the ALJ should use the grids as a framework for "adjudicative guidance." (Id. at 3 (quoting SSA, POMS § DI 25001.001.B.33 (2010)).) Because of the significant erosion of Plaintiff's ability to perform the full range of medium work, Preciado insists that the ALJ should have referred to a less demanding exertional rule to make the disability determination. (Id. (citing SSA, POMS § DI 25001.001.B.71 (2010)).)

Specifically, Preciado contends that the ALJ improperly relied upon Rule 204.00. (Id. at 2.) She asserts that because the vocational expert identified only medium and light-exertion occupations, the ALJ should have started his analysis with Table Three of the grids, which governs medium-level exertion. (Id.) Plaintiff states that Rule 203.12 of Table Three directs a finding of disabled if the plaintiff can establish each element. (Id. at 3.) Further, because the ALJ accepted that "significant erosion" of Plaintiff's ability to perform medium exertion-level work, he should have referred to the light exertional guidelines in Table Two and Rule 202.02 of the grids. (Id. at 3.) Preciado asserts that as "an individual of advanced age, limited education, semi-skilled work history without transferable skills," and significant erosion of her ability to perform the full range of availablemedium work, Rule 202.02 would support a finding of disabled. (Id.)

17

Defendant opposes Preciado's arguments advanced in her Opposition and titles his pleading as an Opposition to Plaintiff Rosie Preciado's Opposition. (Opp'n Pl.'s Opp'n 1, ECF No. 30.) The Commissioner argues that the Court should not consider arguments not addressed in Plaintiff's opening brief and should affirm the Commissioner's decision. (Id.) Moreover, Defendant contends that Preciado's arguments lack merit. (Id. at 2.) The Commissioner states that even if Preciado met all elements of Rule 203.12 in Table Three, the rule would nonetheless direct a finding that he is not disabled. (Id. (citing 20 C.F.R. § 404 subpt. P, app. 2, Rule 203.12).) Defendant asserts that the ALJ's ruling was proper because he found that the Plaintiff could perform at all exertion levels and consulted a vocational expert, who found that a "person with Plaintiff's age, education, vocational profile, and RFC could perform thousands of jobs in the national economy." (Id. at 3.)

### 1. Whether Plaintiff's Argument Should Be Considered

The Commissioner incorrectly characterizes Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment as a reply brief. (Opp'n Pl.'s Opp'n 2, ECF No. 30.) Preciado's Opposition to Defendant's Cross-Motion for Summary Judgment is properly filed as an opposition to the Commissioner's Motion and not as a reply brief. (See Pl.'s Opp'n 1, ECF No. 28.) Federal Rule of Civil Procedure 56 and Local Rule 7.1 permit the Plaintiff to challenge the Commissioner's version of the facts and his supporting arguments in her opposition. Fed. R. Civ. Proc. 56; S.D. Cal. Civ. R. 7.1 (f)(3); see also 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56.80 [1], at 178 (3d ed. 2011).

This Court has already recommended denying Plaintiff's Motion for Summary Judgment [ECF No. 31], and Preciado has an opportunity to respond to Defendant's Cross-Motion for Summary Judgment. Accordingly, the Court will consider the merits of Plaintiff's arguments.

### 2. Merits

An ALJ typically must apply the grids when the plaintiff's impairments consist of exertional limitations. See Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576-77 (9th Cir. 1988). When the plaintiff's impairments reflect significant non-exertional limitations, however, "the grids are only a framework and a [vocational expert] must be consulted." Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000); see also Desrosiers, 846 F.2d at 579 ("If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, that claimant is said to have a non-exertional (not strength-related) limitation that is not covered by the grids.") (Pregerson, J. concurring).

When the grids are not fully applicable, the ALJ must consult a vocational expert to determine whether jobs for the plaintiff exist in the national economy, despite her impairment. Moore, 216 F.3d at 869-70. In that situation, careful consideration of an individual's residual functional capacity is required. See Social Security Ruling ("SSR") No. 85-15 (1985). The ALJ may base a finding of not disabled "on the fact that a claimant can perform some, although not all, . . . work only if such a finding is supported by both the medical evidence and the testimony of a vocational expert." Desrosiers, 846 F.2d at 580. To better assess the plaintiff's limitations and restrictions, the ALJ must present

19

a vocational expert with a hypothetical or series of hypothetical scenarios that are derived from the RFC.  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  The vocational expert must identify a substantial occupational base to sustain a finding of not disabled.  See SSR No. 85-15 ("If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience.").

The ALJ may consider any of the plaintiff's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity."  Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding the ALJ's denial of disability benefits where the plaintiff could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries[]"); see also Burch, 400 F.3d at 681 (upholding the decision to deny benefits that was based, in part, on the fact that the plaintiff performed daily activities transferable to a work setting).

Where the medical testimony of treating and examining physicians is contradictory, the ALJ "'must determine credibility and resolve the conflict.'"  Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002) (quoting Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)).  If the ALJ disregards a treating physician's opinion when forming the hypothetical, the ALJ must "'make [] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"  Valentine, 574 F.3d at 692 (quoting Thomas, 278 F.3d at 957).

1    Here, contrary to Preciado's contention that the ALJ
2 improperly applied the grids to support a finding of nondisability
3 when the number of available jobs for Preciado had decreased, the
4 ALJ's determination was supported by substantial evidence.   See
5 Bayliss, 427 F.3d at 1214 n.1.  ALJ Steinman found that Preciado's
6 ability to work was compromised by nonexertional limitations.
7 (Admin. R. Attach. #2, 26, ECF No. 16.)  Thus, he properly utilized
8 a vocational expert to determine if, after assessing the
9 hypothetical scenarios, the Plaintiff could successfully perform
10 substantial gainful activity and adjust to a new work situation.
11 (See id.); see also Moore, 216 F.3d at 871.  The ALJ expressly
12 adopted the medical expert's RFC assessment and was convinced by
13 the vocational expert's identification of three specific
14 occupations available to Preciado that "other work exists in
15 significant numbers in the national economy." (Admin. R. Attach
16 #2, 25, 27, ECF No. 16.)  In addition, ALJ Steinman heard and
17 reviewed evidence from examining and nonexamining physicians who
18 opined that Preciado had no physical or medical impairments
19 contributing to exertional limitations.  (Id. at 25.)

20    The ALJ discounted examining physician Dr. Altavas's testimony
21 because Judge Steinman determined that it was inconsistent with the
22 Plaintiff's medical record.  (Id. at 23); see Valentine, 574 F.3d
23 at 692; Thomas, 278 F.3d at 957.  ALJ Steinman also found that Dr.
24 Altavas's specialization as an internist limited the value of her
25 opinion concerning the Plaintiff's psychiatric condition.  (Id. at
26 24.)  In particular, the ALJ was troubled by the discrepancy
27 between Dr. Altavas's report, which noted significant physical
28 limitations from Preciado's diabetes and hypertension, and the

21                                    09cv02343 JLS(RBB)

Plaintiff's medical records, which do not "report any significant limitations due to either her hypertension or diabetes." (<u>Id.</u> at 23.)

As required by SSR No. 96-7p and 20 C.F.R. § 416.929(c), the ALJ considered the Preciado's assessment of her capacity to perform work and her social functioning, daily living activities, concentration, and episodes of decompensation. (<u>Id.</u> at 24.) ALJ Steinman concluded that Preciado's allegations were "not totally credible," and articulated eight specific reasons for discounting the Plaintiff's contentions. (<u>Id.</u> at 23-24); <u>see</u>   <u>Curry</u>, 925 F.2d at 1130.

The ALJ followed procedure required to make a disability determination involving nonexertional mental impairments. Here, the "evidence in the record was 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' that [Preciado] was [not disabled]." <u>Curry</u>, 925 F.2d at 1130 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>Burch</u>, 400 F.3d at 679; <u>Flaten</u>, 44 F.3d at 1457 (holding that a court must uphold the Commissioner's decision if the evidence in the record reasonably supports his determination). Consequently, the district court should **GRANT** Defendant's Cross-Motion for Summary Judgment and affirm the Commissioner's decision.

### VII.   CONCLUSION AND RECOMMENDATION

For the reasons stated above, the district court should **GRANT** Defendant's Cross-Motion for Summary Judgment [ECF No. 26].

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written

1   objections with the Court and serve a copy on all parties on or

2   before December 21, 2011.  The document should be captioned

3   "Objections to Report and Recommendation."  Any reply to the

4   objections shall be served and filed on or before January 6, 2012.

5   The parties are advised that failure to file objections within the

6   specified time may waive the right to appeal the district court's

7   order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8

9   Dated: November 30, 2011

10                                        Ruben B. Brooks
                                    United States Magistrate Judge

11  cc:  Judge Sammartino
         All Parties of Record

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv02343 JLS(RBB)